That being Grigsbaum V.Genesis Genetics Institute, Et al. Mr. Stein. Just a quick address. My name is Louis Stein. I'm the director of Grigsbaum V.Genesis Genetics Institute,LLC. I'm from Sacramento, New Jersey. In this case, I represent the Planet of the Talents. And that's the team that's been reserved for our final event. Could you move the microphone a little closer to you so that we can hear a bit better? Thank you. Thank you. Let me give you a few issues that I believe to be unfair in relation to privacy of the planet. First, there has been genesis genetics that includes overhead reproduction of essential monitoring records by genesis genetics for almost two and a half years. That includes the defendants in this court that fight in the way that they charged when we were in statute of limitations. As well as issues that you did write. Didn't you write that? Weren't you afforded an opportunity by Judge Brown, in fact, more than an opportunity, given a specific directive by him, to respond in a supplemental brief addressing, in his words, only NYU defendants reply brief arguments that plaintiff's claims fail under New York statute of limitations and for lack of causation. And that's what the order says. And didn't you fail to file such a responsive submission? Our position, Your Honor, was that NYU initially took the position that New Jersey law applied and just as New Jersey statute of limitations applied. And you took the position, effectively, that it did not. Right. Our position was that New Jersey law does apply, did apply, and when did you take that position? That position was taken in our initial brief in the district court, responding to a motion for some judgment. So did you or did you not file a supplemental brief pursuant to Judge Brown's order that I just referenced? I believe that that brief was the subject of comment by Judge Brown prior to the case. Before the conclusion of the period for filing a substantive brief. And the magistrate judge in charge of the case was then elevated to the district court and was turned over to the judge. And the case was turned over to her. And if the court wouldn't call her decision in order, she comments in my reply to the district court's recommendation that I have an opportunity to respond to the NYU brief. I, again, knew that it would be, since Judge Brown had clearly established the fact that New York law applied, and therefore it would be known. I could not, with any integrity, argue that anything other than that evidence applied to NYU. And, therefore, Judge Brown had already made that determination, and I did file a responsive brief to that. And she commented, in fact, in her opinion letter, that she didn't think that I would argue enough with that brief. But I did make what I thought was an appropriate response, point out that, clearly, you said in my response, in fact, you were saying, taking up appeal, you weren't going to any further argument, the point, you didn't make any distinction between whether New York, assuming New York law applied, it might, some of your claims might fall, and some of your claims might survive. I did not make any distinction. I did not accept the fact that New York law applied. I said that that was our position throughout, that NYU took that position throughout, and I did not think that there was any, that I could, with any integrity, argue that New York law does not apply in that reply brief as far as NYU is concerned, since it already was established by Judge Brown in Judge Brown's opposing. And it was my understanding, and that's why I, how I responded at that time, I don't know if I was able to take that argument grounded in principle or not, but everything else is decided based on the two separate issues here. You're saying that since Judge Brown found that New York law shouldn't be applied, and the question of statute of limitations, you wouldn't argue that, but the issue that I understand that you have to weigh the same way is that you didn't argue the substance as to why this claim was borrowed by the statute of limitations in New York. I did not argue why this claim was not borrowed by the statute in New York, since I assume that the correct ruling was that New York law did not apply to this case. But that's the specific language of the order, the decretal portion of which I read you just a few moments ago. That you filed a supplemental ruling addressing the defendant's reply before you was that plaintiff's claims failed under New York statute of limitations. I don't know what I told you to do. I couldn't understand that aspect of whether it was a question of whether or not, and that involved because of the way the matter was briefed, because in the 10-minute file that he took briefs, at the time that I filed my brief in response to the original motion, there was a second brief filed by NYU, and it was helpful that this was to give me an opportunity to go back to the second brief filed by NYU. That's why I did not do that. But even as I understand correctly now, the issue was on the table at that time, and I would have expected that that ratification of the issue to be considered. I'm drawn now to any other questions that you have. Thank you. If there are no further questions, my colleague is certain. My question was this point that you did. I said in the list that you and I have had these debatations regarding the conflict of wills issues, and also the findings made in terms of the reservation of New York's will, which I think is questioned by New York in terms of justice and the parties here. The situation in this case arises from a change in landscape generated by advances in science. Science involves the medical technology advances involving in vitro fertilization and pre-infection genetic diagnosis. I think maybe we have at this point to take note that this case is not involved and that it concerns the consideration of multiple births, multiple deaths, and multiple conceptions. What are the causes of action that are pled in your complaint? There were three counts, as I read it. None of them were denominated a particular cause of action, and I have to admit, and it may simply be my own failing, that I was not able to discern, at least from the pleading, what theories or what specific causes of action were being set forth there. Please understand this. In this case involved, we had demanded a copy of the laboratory report so that Professor Penn from the Josh Hopkins School could advise us as to what possible damages of malpractice took place. We were dealing in an area where employers could not be established by their own knowledge, and we had to rely on Dr. Cuddy's advice. So, the statute of limitations of two years of the case became, we had to file a most general complaint with respect to malpractice because we didn't have anything. We requested at the end of January a copy of those records, but we didn't get those. We couldn't get them, and so that's why the complaint was couched in the most general terms. However, after two years, when Dr. Cuddy finally got the appropriate records, we were in a position to formulate precise problems associated with what the defendant did, and then carry forward into the case that there was a bag of expert reports which were filled on the basis of these findings so as to be precise to the extent on which the case evolved. And so, that's why the case was couched in general language. In fact, before the correspondence was examined, we initially advised the management to us that we didn't know we had a case at all. We were uncomfortable with this process beyond the statute of limitations. And as a result, once we found out, and then we were able to hire the top of the line people to help us in terms of Dr. Cuddy and Dr. Strong, who headed the question, I guess, who was on the ground floor to establish the community. With that, we were in a position to have one look at the theories and the precise concepts that were there. And we were able to say that a case in which Tim had, according to the claims, had the proper work done, had the genesis, genetics, laboratory, and media, and had the knowledge of the science, then it was time for the jury to consider it. And it turns out that Jeff Brown's decision based on the loss of Dr. Price is not temporary. I've talked to another manager in this case. He's not hearing an answer to a case on this question. What specific claims were you able to see to make a conclusion that the laboratory, in this case, the laboratory malpractice, if you will, was failing to use state-of-the-art science and had a lot of significance in the medical malpractice claim brought by the parents? That's essentially a theory of liability. I mean, is this a wrongful birth claim? Is this a wrongful life claim? I don't know what it is. It's an injury to a child that was born from an embryo that should have been free of— Those are facts, Mr. Stein, or factual allegations. I'm asking what is the legal claim, what is the recognized cause of action, and the term of what is associated with it? You have somewhere in your argument, somewhere in your brief, referred to this as a typical court case. I'm not sure what that means either. What I do know is that it's a med mal case because you have characterized it as that, both in your brief and here this evening. But beyond that, I don't know what the actual recognized cause of action is. A med mal case in that the family failed to use the standard of care required of a laboratory doing analysis at that time. I have a question that involves that. When did that occur? When did the action occur? What's the actual cause of action? The action occurred when the malpractice took place. That was in July 2004. That's correct. But the action, the limitations were not under the juvenile degree of law. It was run until a child suffered the consequences of that action as injured. And that doesn't happen until the child is born. And that, and the law that arguably would support that, is what at least contained waived, isn't it? Well, whether you say you waived it or not, that's the argument. Well, it seemed to me that it certainly wasn't an intentional waiver. A waiver is an intentional act. It certainly wasn't an intentional act to waive that. It might have been an inadvertent lack of clarity in a certain argument, but it certainly wasn't an intentional act, and it's that the word waiver should apply to it. Can I stop now? We'll have you back on the phone in a second. Thank you very much. Mr. Craven? I believe the athletes have divided their time. Mr. Craven, you'll argue the media is for NYU, and Mr. Rufin, you'll argue the Senate for Genesis committees. Thank you, Your Honor. This is Charles Craven for the NYU athletes. The argument, the plaintiff's principle argument, on appeal is the argument that they waived, and their argument on appeal is that under Levelle, the definition under 214A of the New York Code did not begin to run until a child was born. What kind of disrespect of any claim if it was a claim that has been brought by the child? How can the child bring any claim or any theory until a child is born? It depends on what the theory is, Your Honor. Under Levelle, Levelle involved an endogenous injury to an unborn fetus. That's not the case here. We're talking about a fetus that was implanted and turned out to be bearing CF. So, if there is a claim here by the child, how can it possibly arise before the child is born? Again, there's no claim by the child in the New York law. I understand there's that issue, but I'm saying, if there is a viable claim here by the child, would you agree that there's a waiver issue assigned that that can only be brought after the child is born? Yes. Okay, I can see that. Sure. Any jurisdiction that recognizes such a cause of action. Exactly. I thought there were two big hits in my question. I'm accepting those hits. I don't necessarily agree with you. Is it your position that also Levelle is distinguishable because it involved injuries that occurred in utero? Yes, very much so. Very much so. I don't see it. If you accept the yes, then Levelle might apply, but you can't accept the yes because there's a factual distinction between the two cases. In this case, Levelle involved a normal case that was pungent on a possible scenario that he knew. And in this case, it's completely different. So we don't even have to get to the issue of New York law. I agree. And you don't even have to get to the substantive issue of New York law in this case because the plan is waived. If we accept your waiver. Yes. Okay. And I think it's pretty clear. They had plenty of opportunity to argue that Levelle was lying. They could argue that even when they responded to a justice motion for some adjustment. They did not. They never argued Levelle. They never argued the accrual date is on the time the statute starts running as a set purpose. They never did that. And then, as the court has noted today, the decision court explicitly gave the plan some opportunities, to address this issue. And by the way, a couple other things that come into this waiver, I know it has to be intentional. It's got to be intentional in this case. It is intentional. Genesis, in their motion for some adjustment, and in their opposition to our motion, mentioned the statute 214. And the plaintiffs never addressed it. Genesis also mentioned the continuing care exception. All that the plaintiffs had to do, for example, in response to our motion for some adjustment, is take it to a district court. But there can be a distinction between Genesis and NYU, because even though Genesis' last act was in July, NYU continued to care for Ms. Grossbaum. And here's her affidavit saying the continuing care lasted until X, Y, or Z date. And that was well within the 30-month special patient period. The plaintiffs never did that. They never raised the continuing care. They never raised LaBella. And they had plenty of opportunity to do that. For a plaintiff's attorney to come up and say, well, a waiver has to be intentional, given all the opportunities that they have. It's not a matter of semantics. It's a matter of not making an argument that they had the opportunity to make, that the district court directed them to make. And at the same time, they all relied on NYU. The court has to take note, too, that when the plaintiffs got our second brief on this, they wanted to dismiss it. They wanted the district court to disregard all our arguments about the conflict of law. So, yes, there was an intentional waiver in this case. And I think it's fairly clear that New York law, the cause of action in this case, is the loss of a parent's reproductive rights. Is there a claim here by the child, a so-called lawful life claim, that she would not have been born with this disability if the original practice had not occurred, and that that claim, which she has, can only be brought by her starting with the time of her birth, so it is not born. There is that claim. It is not recognized under New York law. It's questionable. Why do you say it's not recognized under New York law? New York just does not recognize a lawful life claim. They knew her when it wasn't well thought of when we were talking about the case. Yes, ma'am. So, the thought was in his head that he would never be briefed by the Court of Appeals. We had to make a petition as to whether the Court of Appeals in New York would treat that case. But that case does recognize a lawful life claim. I know that that case recognizes states that the cause of accident starts at birth. I forget exactly whether it was for the child or just for the parents. But even assuming this, this Court would take that case and compare it to the New York Court of Appeals cases. And in Becker and other cases, I think the New York Court of Appeals has limited New York's recognition of a cause of action for wrong birth to the parents, not to the child at all. So, to me, that case is inconsistent with the dominant law of New York from the New York Court of Appeals. That Court has had opportunities in Becker and other cases to allow a child to bring a cause of action. And in Becker, it just said no. It's just for the parents. And it's just for the parents' loss of reproductive rights. I want to make sure I understand your position on the slavery issue. You said that there was a waiver. And even if there was a waiver, we still have to determine whether or not your argument on whether or not New York would recognize that the cause of action is correct isn't an accurate thing. We just don't believe it's not the fault because the other side didn't oppose your argument at the district court. I think the court can say that the plaintiff's argument on appeal was never raised at a district court in any way. But to make some comfort to the court, yes, our position is correct on New York's slavery. We have to conclude that your position is correct. Yes, I think you can do that. First of all, you take a look at the statute. The statute is explicit that you can accept for continuing care or some other exceptions that don't apply in this case that the cause of action has to be brought within 30 months of the act of mainstream punishment. So that occurred in July, July 2004. The question that remains is if there is a claim recognizable in New York by a child, a long-for-life claim, could that possibly start before the child was born? And if it couldn't possibly start before the child was born, then it would be within the statute of limitations of 30 months. Again, it's a myth that that's very common. And two myths, right? First of all, the cause of action must be cognizable. And secondly, even if it's cognizable, we still have the question as to when the cause of action occurs. Yes.  Yes. So the exact words of Conrad are, quote, the cause of action for a long-for-life occurs at the time of the infant's birth. So that case answers both the questions that were just raised by Judge Smith by saying, yes, there is a cause of action and that it occurs at the time of the child's birth. And you said, Paul, that was not the correct law in New York, and I understand that argument. But if it is, it seems to me it answers both your questions. If it is, I have to acknowledge that. But again, I don't think it is the law of New York. And the briefs have not addressed prediction here, have they? I haven't read them, but I'm not recalling an argument on prediction as to how it would be accepted. No, I think our briefs, I know the plaintiffs cited a lot. There was another fraud division case that they cited, and our briefs responded to that, to those citations, basically came into it. They haven't been reviewed, and they haven't really talked too much into those cases. Well, my point, though, is if we follow this through, as some of the Q&A has gone, and if I correctly recall the structure of the New York court system, the appellate division is not the court of final resort in New York. The court of appeals is. Is that correct? That's correct. So, I mean, what we're left with is prediction doctrine, and we have to look at this and look at problems, look at the other cases, and make a determination as to whether if this is, in fact, what Paulette says, and there is a cognizance of a cause of action in New York, or whether this would be accepted by the New York court of appeals. Yes. I think the court of appeals did affirm Pavlov, and it did reach its issues. So, it wasn't as if the court of appeals didn't have the opportunity to say Pavlov was wrong, and they were required to, because Pavlov was even under that view of the law, and the claim was to be timely, and that's what they affirmed. But it isn't that it wasn't before the court of the case that it made it to the court of appeals. Yes. It was reviewed. That was the one that was reviewed. The court of appeals affirmed the decision. I think it actually was on time. So, I don't think if I can add this interpretation to what the court of appeals did, the court of appeals did not accept that proposition, whether it was accepted or not, because that didn't reach it. So, I think the court of appeals basically said, this action is by Mark, period. Because, again, it's like I said, Pavlov said something. Well, Pavlov also, as you can imagine, said the cause of action is wrongful, but the cause of action begins with the defendant. But they said even under that, the proposition said even under that, it was part of the facts of that particular case, and the court of appeals affirmed it was untimely, and therefore didn't reach the issues we're talking about all day today. Okay, then there are two comments that I would make to that. One is that the commentary in Pavlov's opinion about wrongful life being a cardinalism of the cause of action, and when that starts, it dictates. No. And two, they didn't have to reach that. They had to reach it. They just found that even under that short statute of limitations on the facts of the case, the action is still untimely. Okay, but I don't think that the court has to regard that as a whole new law, because the ultimate decision is that it was untimely. They didn't insist any more. Whatever the theory is, it's untimely, and the court of appeals did not say it was untimely. I understand your point. Okay. Thank you. Thank you. Excuse me. Mr. Lutman? Am I pronouncing that correctly? Yes, sir. Well, I don't even miss your honor to address the Third Circuit if I didn't send greetings from my alma mater. I should say alma mater, and two mercy letters from there. Anyway, I'm not sure that I have a lot to add to what Mr. Craven said. I think this is mainly a wrongful birth case. It is primarily a claim for medical expenses incurred during the raising of the minor child and for the parent's mental anguish. There's another life care plan presented that follows that line. And that's the latest case in the house, however oddly it's been pled as we've proceeded forward. Most states do not recognize wrongful life, and I think that there's a trend that is becoming overwhelming. At the best for the plaintiffs, in this case it's a hybrid, where there is a claim for mental anguish for the child, but not the rest of the claim at all. So it doesn't matter what the majority of states think or not, it's what the New York Court of Appeals would say. Well, if we're looking into a crystal ball, I think. But we would look to that crystal ball based on what the New York Court of Appeals has determined, has said in all of these cases. That's what the argument your colleague was making a minute ago. We're not on what New Jersey or Michigan or even Pennsylvania would say. Actually, I think Michigan might have something to do with this because all of the acts are alleged omissions by general counsel. But you have argued this in the time that it has successfully. The New York Court of Appeals. The New York Court of Appeals. That's right. If all four appellations in New York had held, this is hypothetical, had held that there was wrongful life, a claim for the wrongful life exists, and the highest courts of seven other states have held that it did not exist, would that, as a matter of fact, be the basis for this court to predict that the New York Court of Appeals would not follow that it's appellations had begun to serve a term? Probably not, as you raised the question. I think that is the presence of the law. I think Mr. Craig has addressed that quite well. No one has really briefed for us the question of predicting what the Court of Appeals in New York would recognize, would not recognize in this area. I'm not saying it can't be done, couldn't be done on a supplemental basis, but until today we really haven't been dealing with this case as a matter of predicting what New York state law would be with respect to a wrongful life case. I would have to agree with that statement. But that said, wrongful life, I don't believe, if you look at the whole New York law, that I don't believe wrongful life is established as the law of the state. But that is a lot more clear, isn't it? I think there's a difference between the two. Well, I don't think that the decision can be made here based on the fact that it isn't foreclosed when the enormous trend in the country is in the other direction. Okay. The New York statute is more direct and more specific. Yes. This concession does not say wrongful life in New York. It totally does. I don't want to concede wrongful birth. New York doesn't appear in its statutory provisions. That's really what we need to look at. We need to look at New York court of appeals. We need to predict New York court of appeals. We'll say the New York statutory provision is in question. It seems to me that it's somewhat unclear. Well, perhaps it is. So how do we get to a prediction? How do we get to a right prediction? How do you assess? I don't have any more wisdom to add to this than anybody has already thrown out, except to say that in the case of Genesis, it's one of the less accurate omissions that took place on July 19, 2004, way before the statute of limitations. Way before the statute of limitations would expire, in the case of five months afterwards, I think for Genesis purposes, the approval would be as of their alleged error. Particularly since this is the case where, you know, plaintiffs, both of them, promised in writing to have an MPO of CDS to determine whether the baby was afflicted with cystic fibrosis, and then they didn't do it. Had they done that, they would have been aware of the fact that CF months before the child's birth, and I think that augurs for an argument that approval as to Genesis, who again had less contact way before or pre-day of stuff was over, should be to the day of any alleged error or omission. James Fisher previously asked a question of, I believe, the previous advocate, Craven. Don't we still have to reach the question of whether or not there's a cognizable claim here, even if there has been a waiver? Would that be your position? Do we have to? No, I think a waiver forecloses everything. You raise another point. To the extent it was in the case of the hybrid, and it is, there are claims made for the parent's expenses and the parent's mental anguish, and that's wrong. That's what it's not about in the light. That part at least should be thrown out, because the approval is the date of Genesis alleged error or omission. Maybe there's some wrongful birth aspect left. Not a wrongful life aspect left, but the main part of the case, which is at best for the point of this horribly, the main part of this hybrid case is wrongful birth, and the accrual for wrongful birth is pretty much universally the date of alleged error. Thank you very much. We'll have Mr. Stein back on the podium. Mr. Stein, this is a real question here. We can do it. But if you have a wrongful life claim, if you have that, this is a good question for us to determine. What's the foundation of that wrongful life claim? Where does it emanate from? Because human honor really emanates from the accruals of the birth of the child, but the real question, I think, for our analysis is where does it emanate from? Do you have any sort of question? What's your answer? My argument is that the evidence from a series of conducts of omission and with the failure of the laboratory to properly test the evidence and the results of that action, combined with a series of events that took place at implantation, meaning the conduct of birth and labor, resulted in an injury that took place at the time of birth. Having been clear concepts, that is the way in which the course of action evolves. And most of all, because frankly, if I remember having a son, the court comes to this argument that the proposition that New York applies, we have not discussed it at all. It covers those all questions. We have not discussed it at all. It's just that the New Jersey law applies. We have not discussed it. And frankly, we did. We did this. I just want to make two observations, if I may. One observation, which is the best observation with respect to Winkler, is I asked the court to look at the end-line rule in Winkler that supposedly contained the argument that the New York statute of limitations applied. Even the magistrate judge in her final order said, I am going to, if I may, I'm going to never try to use the term limitation. And she said, the court knows that many defendants fail to realize the statute of limitations that I am going to put in motion. And I remember when they tried it, they made the entire objection of the New York. And frankly, when you use that reproach, there's not a very definitive position of the New York statute of limitations. But that's an advantage in a way that I consider to be the most important thing I can say that the case didn't seem to fit as an opportunity. The science of P.G. Winkler, the genealogy of De Beers and Henry, changes the ballgame from law to death and law to life. If you do not have the issues associated with those clauses of action which condition your right to abortion and the death of a fetus, which are a whole complex of public policy questions attached to that. You don't have that problem with P.G. Winkler. It is science and genealogy that deals with this embryo. And I agree here. The negligence happens to an embryo. It is more akin to the kinds of policies that allow you to sue for bleeding into a fetus. It's more akin to that type of court claim than to the one involving law for birth and law for life claims or even the law for conception claims, which is usually the commitment of legal to help a child and some of the property. And that is the nexus of what I have placed before the court and an understanding of where that science takes you, all the way out of all of the public policy considerations related to the law for life. All right. Your time has more than expired. I think we have gone now into policy issues which are beyond how the case is framed. Thank you very much. Thank you, Counsel Curry. Interesting case. We will take it under advisory. Thank you. Thank you. The next case that I would like to present is Thank you. Which is interesting.  Mr. Frost. Good morning, Mr. Chairman. I have a problem with my heart, but I deserve to know what goes with that. I'm going to start with the procedural history of this case. We, of course, have read the briefs and expect to be expected, my counsel may ask specific questions about the procedural history that there really isn't a need for you to spend a lot of your valuable time on it. But I would like to start out by asking you essentially a procedural history question. And that is, did anyone ask the district court to recuse or was this a sui sponte recusal? A sui sponte recusal. The reason I'm going to get into some of the procedural history is it's going to lead into some other matters that happen in this trial, which is, in this whole case, which is somewhat different than a normal case. This is somewhat different. I was a trial judge for 18 years. I had two courts, and I ain't ever seen anything like this. And just to explain the sui sponte, it was a contagious case. We were actually on the contagious case when the judge announced that we forgot to disclose to counsel that his former firm had some of the civil rights cases in the city of Patterson. And we were in Missouri. Everybody who was on the bench had nothing to do with it. And I didn't see a basis for recusal. But ultimately, he recused himself. And he created a new trial. He made a new trial based on recusal. And he made a new trial based on why he would trial motions. He received a sui sponte motion of effort. So that's how it came about. And that's how we got to Canada. And I'm wondering if some particular distributor would be able to explain to me why you were switching to the military. On the contagious case, there was a $75,000 verdict against defendant Williams, the former chief of police, former mayor, then-mayor, and at the time, the chief. $3,700, $3,700 each. And he saw a few minutes in the city. He was not found wild. He was seeking a new trial, which we thought pushed our motions because it didn't allow our economists to testify as to efforts of not being promoted to sergeant. And that was the bulk of the damages in the case. So recusal aside, if a judge brings a new trial, it's not uncommon to then ask his or her colleague to retry the case. And that colleague then may want to first revisit some motion that was previously part of the case. With respect to that, sir, just to follow up, with the fact that you've revisited the case and reviewed the motions in the case, then all the motions should be reviewed for the case. Essentially, what Judge Traven did was initially said, we're just going to retry the case. And he said that for trial in September after the recusal, which was tried initially as a pre-association case. That was tried as an association case. However, in the decision by Judge Charton, the original trial judge, there was two motions that were pending. And they were both motions without the opportunity to file a responsive motion. At the same pre-trial conference in January of 2008, it was determined that we want to define as a matter of law just a determination just on that issue that the plaintiff had engaged with prestige. The defendant's going to file a motion for some rejudgement. So the judge said, OK, if you file those respective motions along with the motions in the living, then that's why ours came under our motions in the living. Because it wasn't going to hurt us in the judgment. But the district judge, prior to the trial, framed this, going into trial, as only a pre-association risk. And he said, that's aggressive. So trial began April 5 or 6, 1956. But then at the final age for the trial, he issued an opinion saying, basically, I see this as a freedom of association case. So in the course of the trial, he said that the pre-trial order set this up. It's no surprise to anyone that this is a freedom of association case. You can make your decisions under the Indian jurisprudence. And we think that you probably have the right to do that. And it went forward as an association case. And you never did it. We never did it because we felt that the complaint was sufficiently flagged. And that the pre-trial order and the issues framed clearly outlawed the situation. How was the jury instructed? All the jury instructions went in accordance with the freedom of association. But it doesn't. It doesn't. It's not shared until accusable. And in fact, he's granted a new trial because he didn't like the outcome of the case. I like that. I don't know if you want me to talk about it or not. It's remarkable. It's a remarkable issue sometimes. That's true. But didn't, in fact, those two acts wipe out everything that took place? We haven't done that because you leave the case, let me finish that. And you leave the case, basically, with what's on the record, which would be the pleadings and the pre-trial order. There's no such catalog that I'm getting. He did judge. At that point in time, you have a new record. And you segregate the trial. Right. And you go back to the reasons that you wanted to segregate the case. Yeah, but you forget about the trial. You file a fire measure. And you don't do that. And you don't go back to the trial. Because that's what I was suggesting. I didn't refuse a nullify of all that took place. I'm not saying nullify didn't do it. But I should be slow, calm. We've lost millions. And millions are coming to judgment. Clearly, I'm having my opportunity to respond to what you guys have had that opportunity. Wait, wait, wait a minute. You filed a motion for a new trial. Did you file a motion for a new trial or only a new trial as to damages? No. There was one motion. The excluding violence. There was probably a motion for a new trial on damages. There was one new trial motion done with the exclusion of evidence that went to not just damages but also the liability. Yes, sir. So you invited the whole thing. There's no question that I invited a new trial. If you would ask for a new trial simply on damages, this would be a completely different story, as far as you're concerned, and not an unsatisfactory result, right? That is correct, sir. I can see that. So you invited the whole new trial. Sure. And invited a whole new trial in this manner. However, what I'm denying is the fact that the original letter from the court in April of 2010 was that we're going to go back. Judge Charley is the law of the case. And therefore, we're going to try the case as it is with all the existing pleads. Thereafter, Judge Kavanaugh changes his mind and says, okay, I will redesign the issues. But in my letter to May 7th to the judge, I said, we're going to do that, judge. But in fact, I want you to redesign the motions anyway. And I want to be able to add and respond to the motion for some of the other ones. We have a whole new letter. Maybe I'll take a trial, Judge Bishop. And when we resumed that, there was clearly sufficient facts with respect to not only the substation claim, but we felt merely a speech claim. I mean, the facts were very clear. And then the case was just so different than what Judge Kavanaugh was using. And it was almost like, Judge Bishop, you're trying to disappoint me. Why didn't you ask for me to amend so that there would be no question that what you are now pursuing was a treatable substation claim? You had every basis now for asking for me to amend. The other side was on notice of this claim. They had a whole trial about this claim. But you chose not to, Kavanaugh. And I chose not to judge you. I was denying the opportunity. If you read the letter, and you wrote it on the square, that is, Kavanaugh, I was not allowed to supplement anything, and that is the main basis of the appeal. If you look at the order, and you look at the letter, we will not allow anything. I mean, we wanted to supplement. But we didn't want to do all those things. It was a claim that transpired. So I'm prevented from doing that. I'm not prevented from doing that. I'm prevented from even finding responsibility. This is clearly contrary to Rule 36. I have no opportunity to do those things. And that is what the MBS has already realized. That's what I have to guess. In the brief. There are two things here. The original letter, the case that says the appendix for 159. And then we issued an order that everything would be refiled. In respect to everything being refiled, it would be exactly as it is. No supplements. So essentially what we did was, literally, we filed the briefs. That's what we referred to as the one that said we're going to trial, and everything is as it is. I'm talking about where is this letter or order that you say prevented you from amending the letter. Remember, we have page 166 in the appendix. And if you read it, it's May 12, 2010. It says the court will not, however, permit the parties to any additional briefing on the matter, but will modify the existing briefs. None of them can see existing pre-trial order. It says there that it appears that all parties agree that the summary judgment of the motion should be addressed by this court. Do you know what he was referring to there? There were discussions concerning the rehearing of the motion for summary judgment, as well as my motion, as a matter of law, but there was a type of speech. In my letter to the court, when we had those discussions with counsel, my May 7th letter to the court specifically states that, Judge, we're going to do that. I'm going to do X, Y, and Z, and that is I'm going to have supplemental briefs, revised briefs, additional testimony, to be able to supplement everything we did, and I was being preliminary with respect to the association. But in the summary judgment motions, both sides moved for summary judgment, right? No, no. The fact is, we went for summary judgment. We never moved for summary judgment. All we wanted, and we had a thousand-dollar law under a speech that, 75 years, obviously, were motions for the jury, for the court to determine. You had to give your money for it to determine, as a matter of law, as a matter of law. I understand you re-encapsulated some of the motions over the day, or something like that. We re-encapsulated that. It was eight operations in one hearing, because time had already expired. The motions were summary judgment. I mean, this was like a half-a-block on stress-assurance. Well, what is it that you would have said in your response to the summary judgment motion that you didn't say in your motions? Well, I would have gone into it on a speech by many more facts than we had utilized. One of the things that happened in this case is that, later in the case, we obtained cell records, which transpired when Heather came to pick up the cell phone. And one of the cell records coincided with the chief having a telephone conference, or a telephone conversation with my law firm, by a person named St. Jess. Let me just give you briefly those facts. How did he go to pick up the cell phone? And the place he picked up the cell phone at was a lot of campaign activity, signs were being made, people were putting them up. When he picked up the cell phone, the council person by the name Dow who was on city council, was the chairman of Spacknovel's campaign. It was a very publicly contested campaign. Spacknovel was the former chief. For instance, he was a member of the election. When he picked up the campaign sign, Dow says, this is testimony. That's a final brief. St. Jess is going to do this and is going to get targeted. I'll tell you later in the case, and I don't want you to post it, because it's going to result in cell records. So wait for it. The time that he picked up the cell phone, the cell records, coincided with St. Jess and Chief Williams speaking. The very next minute, in May, he was in the office. It was a conversation with my client, saying, oh, that was better news. We should be there. All of these are factual allegations. What do they do for you? Where do they get you? Why are you arguing with them right now? These are all factual allegations. This is factual matter. What does it relate to? How does it help you? Well, it relates to basically that Judge Turner found on the phone that since he didn't go to Washington, that the picking up the sign was a passive act, and therefore there was no action. By his own testimony, he said he wasn't exercising his speech rights, didn't he? No, no, no. That's wrong, Judge. He says I went to pick up the sign. When you moved there, when you got to pick up the sign, that's what was going on. That was Judge Sharon's position, saying to somebody, wasn't it? It was Judge Kavanaugh's position. That's right. That was his position. Clearly, he was going to do this to me. He was going to defend it, proclaim it, and respond. How do you respond when you don't have an opportunity to respond to that motion? All right. We'll get you back out of the bubble, Mr. Frost, and move past your time. Thank you. Mr. O'Connor. Good morning. Thank you, Your Honor. My name is Peter O'Connor, and I would like to comment on behalf of all the attorneys in this particular matter. This is a joint submission of the argument on behalf of all the attorneys. The district court properly dismissed the entirety of the plaintiffs' complaint for the following reasons. First, the district court properly determined that there wasn't a speech in this case, and there was no objection to it. I'm a significant community member of the ex-rails. I've never seen a situation where a court denied a party or court in response to papers, in turn papers, to a summary judgment motion, which was done here not once but twice, so I understand the situation. First by Judge Sheridan, and then by Judge Kavanaugh. Your Honor, we had just finished with the second proposition, but it was agreed upon by all the other two cases. Before Judge Sheridan, we had simultaneous motions. Everyone had an opportunity to file non-credit papers. Motions in the remaining were separate. Motions for summary judgment because the defendants had requested it. Mr. Frost's admissions were, as he captured it and he admitted to that, a motion in the remaining. He wanted that issue of free speech crystallized. That's the only issue he addressed. And visibly, in his papers, in his document that captures the motion in the remaining, he weaves in two paragraphs of a claim on freedom of association. But never before does the specter of a freedom of association claim ever appear. Would you ask? Judge Kavanaugh got it. That specter had gone through an entire trial. It was more, it seemed to have a substance, but it was convinced a similar jury to a word that was just how can we now present it? And a judge to give an instruction on it. It never should have, frankly, in Congress. But to answer your first question, Judge Kavanaugh not allowing opposition. He allowed the same mechanism that Judge Sheridan had indicated to the parties. One set of papers, all parties agreed, the letters, as we just pointed out a little while ago in the appendix, where all parties agreed we would come back to the point in time that the pre-trial order was entered, and then legal issues were to be teed up and addressed. To work and get ready for a trial. For the proper administration of a trial. Are you saying that there was an agreement not to be allowed to consider the December judgment motions that were deployed in this way? Or are you saying that your juror was officer not agreeing that the court had proper discretion? I wouldn't say that there was an error in any way, but I'm just trying to make my statements clear. The parties did not agree that no one is going to file oppositions. But we agreed that Judge Kavanaugh would take the case at that point in time. There were requests made by Mr. Frost, as he indicated. And the court, through his discretion, under the 718, and eventually 78, properly exercised his discretion in the local and federal civil rights procedure to determine those particular issues and move forward. Okay. The plaintiff filed his own admission that he failed to liken or perfect a freedom of speech cause of action. As the court has indicated, on page 9 of Judge Kavanaugh's statute, in page 9 Judge Kavanaugh points to deposition testimony. What do you have to say? If Judge Kavanaugh had given the plaintiff the right to put in the answer to your summary judgment motion, it seems inevitable that at that point given the whole trial and everything he would in his answer have said that in any event, we think there is now a basis for a freedom of information claim to be followed on two wrists, but he was never given an opportunity. Your Honor, it was unthinkably too little to make him do that stage. And why? Because there is no freedom of association claim in this case as this court knows well that two milestones in any federal state litigation is a complaint where you place the defendant and the world on notice of all your claims and all the factual information that is approved. And then the culmination, the entity, the document, the pretrial order, which carves out the ironclad protocol in the case of